Second case of the morning, call 209-269, Terraces of Sunset Park, LLC v. Chamberlin, Epaule. On behalf of the Adelaide, Mr. Michael Haber. On behalf of the Adelaide, Mr. Peter Swan. Good morning, counsel. Good morning. You may. Good morning, your honors. Mr. Swan. Good morning. Please, this is the clerk. My name is Michael Haber and I represent the Plaintiff, Epaule, and the Terraces of Sunset Park, LLC. There are two issues before the court this morning. Number one is whether the trial court erred as a matter of law in finding that the agreement between these parties dated September 8, 2006 was an enforceable optional agreement, giving rise to their ability to retain the purchaser's $100,000 earnest money deposit. And then the second option is, if in fact this was an option agreement, whether the trial court erred as a matter of law, holding that option agreements are not covered by the Illinois Residential Real Property Disclosure Act. With regard to the first issue, we contend, and our brief indicates, that this document was neither an enforceable real estate sales agreement, nor was it an enforceable option. What was it? Please. We believe it never gave rise to an agreement, because what it was was a preliminary agreement, which was to be supplemented by a further agreement. Because on its face, the document says, this is a preliminary agreement, which will be supplemented by a subsequent document, which in fact was prepared. But that subsequent document was never executed by the buyer. Now, I understand that there's a substantial amount of money here, $1,750,000 or something for the purchase price. Correct. But why, if it's not an enforceable agreement, and it's not an option agreement, would your clients put a $50,000 deposit at this point, and then about six months later, another $50,000? What were those amounts of money? Those amounts were preliminary down payments, which would be finalized by a subsequent real estate agreement, which was to be executed by the parties, but never got executed. So that document never existed. But didn't the document that they were paid pursuant to say that once paid, they were not refundable? Yes. What does that mean? It means if you finalize this agreement, and if you complete the transaction by making this an enforceable real estate agreement, and you do not close under that enforceable real estate agreement, it's a nonrefundable transaction. It would be a nonrefundable down payment. But clearly, it presumed that a residential real estate agreement would be executed between the parties and finalized, and it never happened, for whatever reason. It's not part of the record. But during the pendency of this agreement, the sellers could not sell that property to anyone else. Isn't that correct? Your clients were the only ones who had the option to buy it. Isn't that right? If it's a agreement. Presuming the payments were made, and they were. And presuming it's an agreement, but it really never was. There was no consideration? It's our contention. No meeting of the minds? No, because this was a preliminary document, which on its face indicates it's to be supplemented by another document, which, in fact, was drafted. There would be no reason for that subsequent document to be drafted and to be circulated between the parties if it was surplusage. But wasn't the next agreement actually to cover the next step, let's say, the sale itself? Whereas this agreement was an agreement for an option, the right of an option, was it not? No. In our opinion, Your Honor, it's clear that it's not an option. In fact, to say that this document is an option requires a tortured reading of the document itself. The document on its face plainly indicates that in the recitals, which are incorporated into the agreement, plainly indicates this is an agreement for the purchase and sale of real estate. It doesn't say this is an agreement for an option to purchase real estate. The word option appears nowhere in the document. There's no exercise state. It doesn't say how this option would be exercised. Who wrote this document? The seller wrote the document, and the document must be construed against the seller or defendant. They wrote the instrument. It clearly was not written as an option. To find that it's an option basically disregards all of the document itself. The document says it's an agreement for the purchase and sale of real estate. On multiple instances it says that. It says that there's a closing on August 1. It doesn't say that you have to exercise the option by August 1, 2007. It says the transaction will close on August 1, 2007. The Supreme Court in Barnett, which we've cited in our brief, indicates that the words deposit is synonymous with a real estate contract. Deposit and down payment are the same. Black's Law Dictionary actually makes them interchangeable. Deposit is not a part payment towards an option. It's a part payment towards the acquisition of real estate. Another reason why this cannot be construed as an option. The check that is part of the record says, in the memo section, this is earnest money on this property. Earnest money is not an option payment. You can't possibly construe earnest money to mean this is an option payment. There's a closing date. The document says the property is being sold as is. It doesn't say the property is being optioned as is. The forfeiture provision itself, under paragraph 3, says in the event the purchaser fails to close, then the seller gets to retain the earnest money. It doesn't say if the purchaser fails to exercise the option. There's nothing in this document which indicates that this is an option. So for those reasons, Your Honor, we believe that clearly this was not an option. What it was, in responding to Your Honor's question, was a document that never got finalized. It was intended to be a real estate agreement, but it never rose to the level of a real estate agreement. Because what was missing? Well, what was missing were essential elements. The two key elements that were missing were there's no date for possession and there's no method and manner of payment of the purchase price. Those are missing, and we've cited the cases in our brief which indicate that those two items are essential elements to the creation of a real estate agreement. Those are missing. We have no agreement. But from the standpoint of the appellant, we don't care whether there's agreement. Because if there's a residential real estate agreement, the plaintiff never received the disclosure document, which is required under the Residential Real Property Disclosure Act. So once again, the seller would not have the right to retain the earnest money deposit. If there is no agreement, then the buyer gets his money back anyhow because it never rose to an enforceable contract for the sale of real estate. Didn't the document say something about nonrefundable? Yes, it did. But if it's a residential real estate agreement, even if it says it's nonrefundable, it doesn't vitiate the obligation of the seller to provide the residential real estate disclosure documents, which would give the buyer the opportunity to terminate the agreement in the event of a defect, which it thinks rose to the level of one that it did not want to take title on. So that doesn't really get us any further. How, if it's nonrefundable, it would be necessarily conclusively determined to be a real estate contract as opposed to an option? Well, real estate contracts can have liquidated damage provisions. And oftentimes you'll find a contract that will say the retention of the earnest money is the sole revenue of the seller. You're making the equivalency between the nonrefundability of these two deposits as being liquidated damages in the event that there's a breach of this real estate contract? Yes. And in the event that the buyer elects not to close after receiving the disclosure statement, which he's entitled to get under the statute, if he proceeds and he gets a disclosure statement that doesn't terminate the contract, then it's a nonrefundable payment. Well, is the term liquidated damages anywhere in the document? No. Then should we hold it against the seller and make a determination that even though it says it's nonrefundable, he meant it to be liquidated damages, but since it doesn't say liquidated damages, it can't be liquidated damages, therefore it must be refundable and or a real estate contract. I think that it's nonrefundable. If you have a real estate contract, it's a nonrefundable payment after the contract becomes solid by way of the seller giving the buyer the disclosure statement, the buyer accepting the recitation of what the defects or non-defects are of the property, and then we have a solid contract and you go forward. If he does not close at that point, then the seller gets to retain that earnest money or that down payment as indicated in the agreement. The language of this particular provision, though, says both installments noted above once paid, we're not disputing that they're paid, are nonrefundable and deemed earned by the seller once paid in consideration for seller's participation in this transaction with purchaser. It doesn't say within this sale, it says within this transaction, and the transaction covers more than just the documents. Doesn't it cover the agreement, the negotiation, the holding the property in abeyance from other potential purchasers because your client keeps coming up with checks that amount to those things needed over a period of time? Yeah, and I respectfully disagree, and I'll tell you why, Judge. Because if you look at this language, it says that this is being paid in consideration for seller's participation in this transaction. What is this transaction? If you look to the recitals, the recitals are clear. This transaction is an agreement for the sale of real estate. That's what the transaction is. We don't have to look outside of this document. It's very, very clear. It doesn't say the transaction is for an option to purchase property. The transaction is defined within the four corners of this agreement. It is a sale and purchase of real estate, nothing more, nothing less. It just never rose to the level of a finalized contract. But if it does rise to the level, nonetheless, the plaintiff would be entitled to get the disclosure statement under the statute. The next issue, though, is if, in fact, this court agrees with the trial court that this is an option, the issue is does the option still fall within the purview of the statute? And I think it's clear that the option does fall within the purview of the statute, and there's a good reason for it. First, we know that under the statute, the statute is intended to be all-inclusive. It refers to all transfers by sale or exchange. And one thing is it refers to a transfer which is a residential lease with an option. Well, what is a residential lease with an option? When you do a residential lease, we know it doesn't cover just residential leases, apartment leases. We know it doesn't cover that. But we do know it covers residential leases with an option. Okay. Well, when someone signs a residential lease with an option, he or she puts money at risk. And before the legislature wants that person to put money at risk in connection with this transaction to potentially purchase this property, he or she is supposed to get his disclosure statement. It's the same thing with this option. Before this optionee puts money at risk, he should get the disclosure statement. What is the operative part of the lease with an option? It's clearly not the lease because the lease by itself is not covered by the statute. It's clearly the option which is covered. In fact, there's a definition of prospective buyer, and a prospective buyer is defined as any person or entity negotiating or offering to become an owner. Well, that's exactly what this would be if this was construed to be an option. It's a person or entity who is negotiating to become an owner. It's a consumer protection statute designed to protect someone when they are at risk. So it's the option portion of this residential lease with option which gives rise to the protection that is afforded by the statute. But isn't it also the transfer of the property and the lease constitutes a preliminary transfer of the property in terms of possession? There's no transfer going on here. No, and the reason why I disagree is because we know that just a residential lease is not enough. If there's a residential lease, you don't fall within the statute. So what happens is it's referring to the subsequent transfer where the residential tenant elects to exercise an option. He or she does not have to exercise the option. We don't know whether there will ever be a transfer. But if there is going to be a transfer, then there is going to be an exercise of the option. But prior to the exercise of that option by the residential tenant, he or she gets the disclosure statement. Same thing here. There may never be an exercise of the option if this is an option agreement. But prior to the exercise of that option, he is entitled to get the disclosure statement. It's exactly analogous to the situation with the residential lease. There is really no difference. We know that the statute was intended to be mandatory. I mean, this court has extended the statute to apply to as-is contracts. In the Skaren case that was decided by this court, you know, apply the statute to even where there is a sale with an intent to tear down the property. You know, the buyer can't waive the rights under the statute. It's intended to be all-inclusive. The purpose of the act is to protect these potential buyers. So if you're going to protect this potential buyer who falls within the act, someone who is offering to become a purchaser, just like under this option, then you have to apply the act to this scenario. Wait, you just said it's supposed to protect the buyer. Since when is a mere leaseholder a buyer? A mere leaseholder is not a buyer. But a mere leaseholder with an option to purchase is a buyer under the definition of the statute. He is a prospective buyer. So we know the leaseholder would not be. So it's the optionee that must be what falls within the definition of the statute. As far as you're concerned, he's a buyer. And you don't need to have a possessory or any other interest in the property other than merely being a buyer. Because if you were merely a leaseholder, you wouldn't be entitled. But because you are a leaseholder with an option, then you supposedly are a buyer. Is it that you're a buyer? Put it another way. As I understand your argument, a disclosure statement is required any time someone is a buyer as opposed to someone who is a buyer and has a possessory or some other interest in the real estate. Correct. Exactly. The mere possessory interest is not sufficient. I asked you an alternative question and you said yes. No, no. It's an A or B and you said yes. I apologize. The mere possessory interest is not sufficient. We know that because the statute does not cover just the residential tenant. The mere possessory interest clearly falls outside of the statute. So it must be the fact that this person can potentially become a buyer because he has an option. It's the option that gives rise to the statute's application. Thank you. You'll have time to rebuttal. Thank you. Thank you, counsel. Mr. Swine. Thank you very much, Your Honor. Please support counsel Peter Swine representing Thomas Chamberlain, Diane Dorgan. First I want to clarify. I'd like to ask you a question. Is there anything that he said that you agree with? Well, I'll start off with the first thing I disagree with, his reading of the statute. Section 10 of the disclosure statute states that defines the transfers that are covered. It states that any transfer by sale, exchange, installment, land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease, residential or real property. Leases are covered. If it's a ground lease or assignment of ground lease, because you can have a ground lease for 100 years. It's almost the same as buying it. It's a lifetime. So leases are covered. If it's a residential ground lease, you have to give the disclosure statement. Not if it's an option. If they wanted options covered, they would put options in here. Because they put a lease with an option because you're getting this lease interest, which is an estate. You're acquiring an estate. And I understand if you're acquiring a residential estate and you're agreeing to acquire a life estate, a 100-year lease or whatever, you should know what you're getting. That's fair. But in an option, you're not agreeing to acquire anything. You're agreeing to acquire a right to maybe, if you solely choose, to decide, maybe I want to buy this. That's all an option is. And we've cited many cases that describe what an option is. One thing that's consistent, it's not a real estate contract. They all say it is not an agreement to sell an interest in real estate. It's an agreement to sell a right to, in the future, enter into a bilateral contract. It's a unilateral right given to a person, unfettered, to decide if they want to enter into a real estate contract. And that's exactly what we have here. No one's argued there's any ambiguity in this agreement. No one said this provision is ambiguous. You need to bring in parole evidence. So once we know there's no ambiguity in the agreement, we look to the language to determine the intent of the parties. Here, the language is clear. It grants the buyer an unfettered right not to close for any reason it wants. It cannot close in that first period. It puts $50,000 down. Not as earnest money, just it's called a payment. $50,000 down goes through May 1st. The buyer can say, I don't want to put the second $50,000 down. I'll walk away. They can put the second $50,000 down. Now they get another period of time, through August 1st. And they have the right to close. Then, if they don't want to, they can walk away again. And all they lose is that second $50,000 and the first $50,000. But they don't have to buy the property. And that's where the bilateral issue comes in that differentiates an option from a real estate contract. In a bilateral agreement, my client could say, I want to make you buy this property, okay? I'm ready, willing, and able to sell it to you. You agree to buy it from me. All the contingencies are met. You need to buy it from me, okay? That's bilateral. That gives rights to both parties. Options are unilateral. That means there's one party that can make the decision, buy or not to buy, and just walks away because he's made his payment up front for that right. He sacrificed his payment, made the payment up front, now has a unilateral right. And that's what we have here. That's the language of this agreement. And that's the court's job to read the language that's unambiguous, admittedly, and determine the intent of the parties. These parties intended to have basically a year in which the buyer could make up its mind whether for any reason it wanted to buy it or not buy it. And that's exactly what we have here. My client lived up to its bargain, kept the property available, and the buyers at the last minute, in our opinion, decided to come up with an excuse to try to get their money back. And they raised this issue of the Disclosure Act. And the Disclosure Act would never apply to this situation. It applies to an agreement to transfer property. Think about it. Under their interpretation, the day they signed this option agreement, my client would have had to give them a disclosure statement on this property, knowing that they're not even going to close for another year, when the property could change, anything could happen on the property in the meantime, would have to give them a disclosure statement. Now, if that was true, you'd think there would have been some sort of request for it in the year that passed by while they made two $50,000 payments. The record shows no request for it. Instead, what we have is actions consistent with an option. What happened? That we know. They signed what we call the option agreement. At the same time, they drafted a standard multi-party, multi-form residential real estate contract 4.0. That agreement, in fact, has the disclosure requirements in it. They signed this option agreement. Mr. Barnett, Michael Barnett, signed the option agreement on behalf of the purchasers. My client signed on behalf of themselves. My client also signed the real estate contract. So did Mr. Barnett sign that contract also. But as guarantor and left the purchaser line blank. So now he has a contract, a real estate contract, a standard one that everyone uses, signed by my client and signed by him as guarantor. All it needs is his signature on it as purchaser to effectuate a real estate contract. And he's also got this other agreement. In this other agreement, he has time. He's buying time to make a decision. He's buying essentially 344 days to make up his mind. And 340 days goes by with not an objection. And then in July, right at the end of July, they make a demand saying, the contract's terminated, you failed to give a disclosure statement to us, and we want our money back. Those are the facts of the case. And I say the facts of the case, the actions of the parties evidence an option, a way to effectuate the option by signing the real estate contract, and a decision not to effectuate the contract by not signing the real estate contract and attempting to cancel the transaction. Unfortunately, the language is clear on this option. It's not refundable in large letters. It also talks about for any reason. In large letters or in caps? Caps, sorry. In capitals. And it doesn't say it just once. It says it twice. For any reason, the money is not refundable, and the transactions are null and void. So I think the words null and void, the court seized on the word transaction as opposed to real estate sale. This was a transaction. The real estate sale was the other agreement. This was the transaction that led up to the real estate sale. And I would answer any questions you have on the point, but I believe that the court should not extend options to be covered under the Residential Real Property Act. To your knowledge, is there any law requiring an option to say I'm at some place option? No, no, I don't believe so. Because the way the law reads, options have specific characteristics. Granted, if I was a person drafting that, I would try to include in the future the word option. I would make it clear. But it's the characteristic of the agreement that makes it an option. It's the unfettered right by one party to cancel it for no reason whatsoever. A normal real estate contract has contingencies, but they're contingencies that are really done by third parties, getting financing, getting rezoning, maybe getting a variance or something. But you can say, did you get the variance? Did the third party give you the variance? Did the third party give you the financing? It's that unfettered right just with the person who has the option. And that's the difference. Well, I agree that the term, I think it's 2C, is unambiguous. But then if you look at the whole agreement, or the whole, well, it's called an agreement, so let's just call it, they talk about additional documents to supplement this sale contract. That's a bit ambiguous. You get to the actual payments, and at one place they're called initial down payments, and another place they're called installments, and then on paragraph D, both installments noted above once paid are to be deducted from the purchase price at closing. So that one term about nonrefundable may be not ambiguous, but all the things around it are kind of murky. How do we deal with that? I think you have to look at the intent of the parties. You're right. In almost any agreement, you're going to get some language that you could say you could go one way or the other, but you have to look at the overall intent of the parties on the whole agreement, giving all the language its natural meaning. And I think when you capitalize words, you show intent. And I think the intent is to make it nonrefundable. The intent is to make it null and void if they don't close for whatever reason. Also, I think that's what you're really looking at. Could it be more artfully drafted? Yes. It could be more artfully drafted. But I think combining this agreement with the fact at the same time they did a residential real property sale agreement, and we know that for the fact, shows the intent of the parties both by their language and by their conduct, how they were going to treat this. And it also gives an effective way to exercise the options by signing the contract saying, here, we signed it, there it is, let's close. So that's what I would say with regard to that language, and I think you're very correct. It could be more artfully drafted, but I don't think it overrides the whole intent of the agreement to give the specific period of time, which is what you generally buy in an option, a period of time, to make an unfettered decision. And that's what they had there. Thank you very much. Any more questions? Thank you very much. Mr. Haber. First, I'd like to address the capitalized terms that we're talking about, the importance of the capitalized terms. If you look at the actual agreement, and if you look at the signature page of the agreement, capitalized is purchaser, capitalized is seller. The sellers signed as sellers. They did not sign as optioners. They signed as sellers of residential real estate. The purchasers signed as a purchaser of residential real estate. Those are capitalized terms which show what the intent of the parties was. The second recital says, this is a basic agreement on the sale and purchase. A basic agreement on the sale and purchase, nothing ambiguous about this. This is a basic agreement on the sale and purchase to be supplemented by an additional document. And we know that that additional document was actually drafted. The prime group case, I think, is interesting because it's somewhat analogous to this situation. In that case, there was a developer who had 10 30-day periods in which to continue to do due diligence before he would be obligated to close on this transaction. In that case, the court said that was not an option. That was part of the real estate transaction. It wasn't called an option. If the agreement had been intended to be an option, they would have called it an option. And the court said what the agreement is called is probative. It would have been very simple. The seller had ample opportunity to call this an option. An option is not some archaic term that no one is aware of. Mr. Hager, or Hager, Mr. Swan indicated that there was a document that was signed by your client as guarantor. It wasn't signed as the purchaser. Correct. It was a form, I think, 4.0. Correct.  Yes, it did. And are we to believe that that purchase price would not have, if the contract had been executed, that purchase price would not have been diminished or your client would not have received $100,000 towards the purchase price? No. In fact, he would have because the $100,000 was, under the agreement, a down payment. It was not an option payment. It was a down payment. In a way, your client could have had the best of both worlds to the extent that we read the document and determine that your client had this ability to enter into the contract or walk away and essentially have liquidated damages of $100,000 or $50,000, depending on when he decided to walk away. But if he also decided to execute or sign the contract, then he wouldn't have lost his $100,000. It actually would have been in the nature of a windfall to the extent that he would have gotten a $100,000 credit, where if we are to accept a trial court's position, this was an option and the purchase price should not have been reduced by the $100,000 because this was separate and individual considerations such that when, of course, you've already paid the $100,000, but on closing, you'd have to pay the actual purchase price that was set forth in the unexecuted document. I don't think the trial court is even suggesting that the buyer would not get credit for the $100,000. The document on its face is clear that the buyer is going to get credit for this $100,000 payment against the $1,750,000 purchase price. I don't think there's any ambiguity as to that anywhere in any of the documents. I think the other point that Castle made was he said, why would the seller give this disclosure statement on the initial execution of this agreement when this transaction wasn't going to close for a year later? Well, the legislature intended for that document to be given at the earliest possible time. Section 40 of the Act says that if a condition changes after you give your disclosure report, so long as the seller didn't know of the existence of that condition at the time that they gave the initial disclosure report, that does not give rise to the right of the buyer to terminate the contract. So the seller is not harmed at all by giving the disclosure statement at the earliest possible moment. And we know that this disclosure statement is required in a residential lease with an option, and a residential lease with an option can go on for years where the optionee doesn't have to exercise the option for a period of time. And many defects may occur after the initial date when that option is granted. I think what's important to recognize is that if we call this an option, and if we say that this is an enforceable option agreement, we're opening up a Pandora's box. We're allowing buyers and sellers of real estate to structure their transaction as an option agreement. They don't even have to call it an option agreement. They can call it a basic agreement for the sale and purchase of real estate and circumvent the statute. Certainly that is not what the legislature intended. Thank you. Thank you very much, counsel. The court will take the matter under advisement.